IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARY PARKER,

Plaintiff,

v.  No. 10-0132-DRH

MADISON COUNTY REGIONAL
OFFICE OF EDUCATION,

Defendant.

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

Pending before the Court is plaintiff's motion and memorandum for award of non-compensatory damages (Doc. 99). Plaintiff maintains as of November 12, 2012 she is entitled to back payments, benefits and prejudgment interest in the amount of $89,102.79, immediate reinstatement as a Youth Advocate or, in the alternative, front pay and benefits, reduced to present cash value in the amount of $240,752.00 and future lost earnings of $100,000.00, as well as the $100,000.00 compensatory damages awarded by the jury.[1] In addition, plaintiff asks for attorneys' fees and costs. Defendant opposes the motion in its entirety (Doc. 102). After reviewing the submissions and applicable law, the Court grants in part and denies in part the motion and awards plaintiff the following.

In February 2010, plaintiff filed suit against defendant, her former employer

---

1 As final judgment has not been entered, plaintiff calculated her costs using November 12, 2012. Thus, additional figures need to be determined up to the date Judgment is entered.

(Doc. 2). Plaintiff brought this action under Title VII of the Civil Rights Act of 1964 ("Title VII), and the Civil Rights Act of 1991, as well as the Equal Pay Act, 29 U.S.C. § 201 *et* seq. ("EPA") to correct certain employment practices she alleges were unlawful and to provide appropriate relief to her. She also alleges that she was adversely affected by such employment practices (Doc. 79, p. 2). On November 9, 2012, the jury returned a verdict in this matter (Doc. 84). Specifically, the jury found in favor of defendant and against plaintiff on Counts I and III of plaintiff's complaint (Title VII wage discrimination and Equal Pay act claims). Further, the jury found in favor of plaintiff and against defendant on Count II of plaintiff's complaint (retaliation) and awarded plaintiff $100,000.00 in compensatory damages.

Prior to the Civil Rights Act of 1991, a prevailing party in a Title VII action could only recover equitable relief, not compensatory damages. *See Randolph v. IMBS, Inc.,* 368 F.3d 726, 732 (7th Cir. 2004) ("Until the Civil Rights Act of 1991, only equitable remedies (including back pay) were available for violations of the 1964 Act"). "With the passage of the Civil Rights Act of 1991, a plaintiff also may recover compensatory damages," *see Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1031 (7th Cir. 2003), which are subject to limitations or "caps" based on the size of the employer. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 119, 122 S.Ct. 2061, 152 L.Ed.2d 106 (2002). Back pay and front pay are not considered "compensatory damages" under Section 1981a, and thus are not subject to any statutory caps or limitations. *See*

1981a(b)(2), 2000e-5(g); *see also Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001); *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499 (7th Cir. 2000). Also, courts may award front pay in lieu of reinstatement. *See Shick v. IDHS*, 307 F.3d 605, 614 (7th Cir. 2002) ("Front pay is an appropriate remedy in Title VII cases when reinstatement is not available or not advisable because of workplace incompatibility.")

### Back Pay and Benefits

The Court finds that plaintiff's numbers regarding these calculations are correct based on the evidence introduced at trial and in the motion. Based upon the jury's finding that defendant's failure to recall plaintiff was retaliation, her right to compensation should be based on the amount of salary and benefits for the FY'10 budgeted position of the Youth Advocate. However, as the Court is entering judgment today, August 29, 2013, the Court added to plaintiff's figures a one year salary difference with benefits from the front pay chart because the back pay chart calculations ended November 9, 2012. Thus, the Court awards plaintiff $107,860.78 in back pay and benefits ($86,048.08 + 21,812.70 = $107,860.78).

### Pre-Judgment Interest

The Seventh Circuit has held that if there is no statutory interest rate, the district court should use the prime rate unless it engages in a refined rate-setting analysis. *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1990)(holding that to "award something other than the prime rate is

an abuse of discretion, unless the district court engages in such a refined [rate-setting] calculation"); *see also Frichter v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002). Because this action arises under federal law, and there is no statutory interest rate, the prime rate is appropriate.

Here, plaintiff requests 3.55% as the prime rate in calculating prejudgment interest. Plaintiff maintains that in September 2009 the prime rate was 4.19% and at the time the motion was filed the prime rate was 2.9%: the average of those rates is 3.55%. Plaintiff used the prime rates from the Federal Reserve Bank of Minneapolis. Based on the above case law, the Court agrees that it should use the prime rate, however, the Court disagrees with plaintiff's numbers. According to the http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm, the prime rate currently is 3.25% and has been 3.25% since December 16, 2008. Thus, the Court will utilize 3.25% as the prime rate for calculating the prejudgment interest. Thus, the prejudgment interest based on the back pay and benefits calculation is $3,505.48 ($107,860.78 * .0325 = $3505.48).

**Reinstatement / Front Pay**

The Court, based on the parties' briefs, finds that reinstatement is not feasible and that front pay is appropriate in this matter. It appears from the briefs that defendant is concerned about its fiscal condition in that it does not have funding for two Youth Advocate positions and plaintiff's reply indicates that she would rather the Court award front pay instead of reinstatement. Parker asks for front pay to the date she would have worked until she could have retired with full

pension benefits. Parker maintains that under the benefits system she would have had to work a total of 35 years to achieve this.

The parties dispute whether plaintiff is entitled to front pay, which is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard*, 532 U.S. at 846. "Front Pay is an appropriate remedy in Title VII cases when reinstatement is not available or not advisable because of workplace incompatibility." *Shick*, 307 F.3d at 614; *see also Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001) ("When reinstating a successful Title VII plaintiff is not feasible, front pay is usually available as an alternative remedy."). As the Seventh Circuit instructs: "A plaintiff who seeks an award of front pay must provide the district court with the essential data necessary to calculate a reasonably certain front pay award," including "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *Bruso*, 239 F.3d at 862 (internal quotations and citations omitted). "If the plaintiff fails to provide this information to the district court, the court will not abuse its discretion if it denies his request for front pay." *Id*.

The Court agrees with plaintiff that an appropriate calculation is to use the equivalent of 18 years salary difference between what Brian McGivern currently earns in the 10 month/200 day contract of a Youth Advocate and what Parker earns now, plus the employer contribution benefits, reduced to present cash. The Court finds that plaintiff is entitled to $220,780.57 for front pay ($21,812.70 x 18 = $392,628.60, future value, and the present value of that is $220,780.57). See

http://www.investopedia.com/calculator/pvcal.aspx. As the Court is entering judgment today, August 29, 2013, the Court used 18 years instead of 19 years for the front pay period and 3.25%, the prime rate, to calculate the present value.

### Lost Future Earnings

The Civil Rights Act of 1991 added new remedial provisions to Title VII to authorize compensatory damages for plaintiff's "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). An award of lost future earnings is a common-law tort remedy. "To recover for lost earning capacity, a plaintiff must produce 'competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him.... [A] plaintiff must show that his injury caused a diminution in his ability to earn a living.'" *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998)(citations omitted). Case law makes clear that the "injury" resulting in a diminution in the plaintiff's ability to earn a living cannot be simply a denial of employment; a plaintiff must show that the discrimination he suffered caused a *reputational* harm—injury to his professional standing, character or reputation. *See, e.g. Id.*at 953. ("The lost future earnings award ... compensates [plaintiff] for a lifetime of diminished earnings resulting from reputational harms she suffered as a result of [defendant's] discrimination.").

As to lost future earnings, plaintiff merely requests $100,000.00 in lost future earnings. She does not explain how her reputation was harmed nor does the record contain any evidence of reputational harm. There was no evidence at

trial to support such a conclusion. Hence, lost future earnings are not proper in this case and the Court denies plaintiff's request for such.

Accordingly, the Court **GRANTS in part** and **DENIES in part** plaintiff's motion and memorandum for award of non-compensatory damages (Doc. 99). The Court **AWARDS** Parker $107,860.78 in back payments and benefits; $3,505.48 in prejudgment interest; $220,780.57 in future pay; and $100,000.00 in compensatory damages as awarded by the jury. The Court **DIRECTS** the Clerk of the Court to enter judgment based on this Order and the jury verdict of November 9, 2012.

Further, the Court **ALLOWS** plaintiff up to and including September 30, 2013 to file its motion for attorney's fees and costs and **ALLOWS** defendant up to and including October 15, 2013 to file its response.

**IT IS SO ORDERED.**

Signed this 29th day of August, 2013.

Digitally signed by
David R. Herndon
Date: 2013.08.29
15:00:58 -05'00'

**Chief Judge
United States District Court**